Morris *v.* Taylor.

---

## MORRIS *vs.* TAYLOR and others.

1. To support the defence of usury, the evidence must be clear and cogent.

2. The act of April 12th, 1864, respecting usury, does not do away with the forfeiture, though it lessens the severity of the penalty. The same strictness of proof is required since the act as before.

3. The fact of usury being exclusively within the knowledge of the parties, and their testimony respecting it conflicting, each testifying from recollection, and without any book of account or other record of their mutual dealings resulting in the mortgages alleged to be usurious; and neither being able to give a satisfactory statement of the various payments, loans, or securities included in the mortgages; *held*, that the usury was not established by the proofs.

Morris *v.* Taylor.

4. Where notes on which illegal interest had been reserved are included in a settlement of what is due between the parties, and a mortgage given upon a new agreement for the amount, the usurious taint will be extinguished.

---

The cause was argued upon the pleadings and proofs, before the Vice-Chancellor, to whom the same had been referred.

*Mr. J. J. Ely*, for complainant.

*Mr. W. H. Vredenburgh*, for defendants.

THE VICE-CHANCELLOR.

The bill is filed to foreclose two mortgages, made by Taylor and wife, the defendants, to Morris, the complainant. The first is dated August 26th, 1867; the second, April 13th, 1869. Each mortgage is for $2000, with interest. The defence set up in the answer of Taylor is, that both mortgages are usurious; that he did not receive for either mortgage the sum it was given to secure, but for the first only $1746.10, and for the second only $1590.

The facts in regard to the true consideration of the mortgages are exclusively within the knowledge of the parties, and both have testified as witnesses. They contradicted each other in direct and irreconcilable terms.

Prior to the giving of each mortgage, there had been mutual dealings between them, covering considerable time, and involving the particulars of cash loans, checks, and notes, of which each speaks from recollection, and without any book of account or regular record made of the transactions as they occurred.

These dealings resulted successively in the two mortgages in question, though neither is able to state, with clearness and certainty, what items were included, or how the amount of each was made up. The loose manner in which their dealings were conducted, is sufficient to account for some of the confusion and inaccuracies apparent in the statements of

both, but not for the direct conflict which their testimony exhibits. Upon carefully considering the proofs, I am by no means free from suspicion and doubt as to the second mortgage, but cannot, upon the whole, regard the evidence as sufficient to justify the conclusion that either is usurious, still less to enable me to say what amount, if any, was usuriously reserved. To maintain this defence, the evidence must be clear and cogent. The burden of proof is on the party setting it up. These familiar rules have been repeatedly laid down by the courts of this state.

In *Brolasky* v. *Miller*, 4 *Halst. Ch.* 790, Justice Potts, delivering the opinion of the Court of Appeals, says : " Usury should be strictly proved. It is not sufficient for the party who sets it up to make out a *probable* case. We cannot undertake to guess away men's rights upon vague or doubtful testimony."

In *N. J. Patent Tanning Co.* v. *Turner*, 1 *McCarter* 326, Chancellor Green says : " It is not enough that the circumstances proved render it highly probable that the transaction was usurious. The usury must be proved, not left to conjecture."

In *Barcalow* v. *Sanderson*, 2 *C. E. Green* 464, Justice Elmer, delivering the opinion of the Court of Appeals, says : " While it is the duty of the court to maintain the law against usury, and carefully to prevent its evasion by any shift, covin, device, contrivance, or deceit, we are not called on to enforce its severe penalties, without evidence entirely satisfactory and free from doubt."

In *Conover* v. *Van Mater*, 3 *C. E. Green* 481, arising after the supplement to the act respecting usury, approved April 12th, 1864, it was held that while that act lessened the severity of the penalty, it still worked a forfeiture, and that the same rule of evidence must still apply to such a defence, as had always, both at law and in equity, been adopted in case of penalties.

In the present case, Taylor testifies that for the first mortgage he received two checks, one for $1000, and an-

other for $746.10; and that these formed the whole considera-
tion he ever received for it. Morris denies this, and says that
when the mortgage was given, they had a settlement of their
dealings; that Taylor owed him borrowed money; and that
the two checks were given for the difference between what
he owed and the amount of the mortgage. He swears that
he did not keep back any part of the difference between the
amount of the checks and the amount of the mortgage, and
that he received nothing in any way as a bonus. Taylor, on
the contrary, swears that he never, in any way, received
from Morris the difference between the checks and the mort-
gage; but, while admitting that he had money dealings
with him before the giving of the mortgage, says that he
then owed him nothing but a note, which he thinks was for
$400, and which he afterwards paid and took up. Morris
testifies that the difference was for money previously lent,
not by check, but in cash. He kept no book account of it,
and cannot give the items; but swears, positively, that he
lent him the money, and, as near as he can recollect, within
a month before the mortgage; that Taylor had the money
at two or three different times, of which $100 was had at
one time; and that they afterwards figured up what was
owing, and he gave the check for the balance.

Taylor does not deny that Morris lent him money prior
to the first mortgage, but says that he lent him none out of
his pocket, nor without taking something to show for it.
To prove that Taylor was wrong in this, one Jacob W. Buck
was produced, and testified that in 1866 or 1867, he saw
Morris let Taylor have money—more than one bill, but
could not say how many. He says it was at the time Tay-
lor was building. It appears from Taylor's testimony, that
he was building during the season when this mortgage was
given. The testimony of Buck corroborates the story of
Morris.

A further corroboration is found in the testimony of one
James Danby, who says, that in the fall of 1867, at his mill,
he had a conversation with Taylor about his getting money

from Morris, and that Taylor then told him that he had got $2000 from Morris, on bond and mortgage, and that he had charged·him nothing for it.

It is unnecessary to review the evidence in detail. I am satisfied that Taylor is wrong in saying that $1746.10 was the whole consideration of this mortgage, and think the weight of the evidence to be, that he received the full amount named in it. It was given in August, 1867. Several years afterwards, when numerous other transactions had intervened, quite likely to produce confusion and uncertainty in his mind as to the items of them, and still more as to what had previously occurred, he attempted to give from his memory, or by the aid of his bank book, the particulars that made up this mortgage. It is not necessary to question his veracity, but his testimony is not such as to inspire confidence in its accuracy, and is contradicted by his statements at the time. The probable erroneousness of what he says of the first mortgage, impairs confidence in what he says of the second. As to the latter mortgage, there is more room for doubt than as to the first. I am satisfied that Taylor received more for it than the $1590, which he names. But that he received the whole of the $2000 it was given for, may well be doubted. The testimony of Morris in regard to it, is unsatisfactory and fairly open to criticism. But the same is true of the testimony of Taylor. Much of the testimony of both relates to this mortgage. What I have before said of the character of their mutual dealings, the loose way in which they were conducted, and the evident inability of either party to give the true and full particulars, is more applicable to this mortgage than to the first.

Morris says, in substance, that when it was given, a settlement was made between him and Taylor, and that what he then owed him on outstanding notes, and for borrowed money, together with the check of $600 then given, made up $2000. But he cannot give items; and speaks with

vagueness of dates and amounts. They differ as to what securities were included in it—a note for $150 being alleged by Morris to have been included, and denied by Taylor. It seems to me probable, from the evidence, that this note was included and forms part of the true consideration.

It is quite obvious that in so many different money transactions as are shown to have occurred between the parties, and following which these mortgages were given, illegal reservations might easily have been made that cannot now be established by proofs. There is good ground to suspect that such reservations were made. Morris' story is, that the second mortgage was upon a settlement in discharge of outstanding notes, and for money due, as well as for money then paid.

Assuming that these notes, or some of them, were usurious, as Taylor in his answer and testimony alleges, the effect of a new security given in renewal or discharge of them, upon a settlement and new agreement between the parties, would be to wipe out the usurious taint. *State Bank of Elizabeth* v. *Ayres,* 2 *Halst.* 130; *Hoyt* v. *Bridgewater Copper Mining Co.,* 2 *Halst. Ch.* 253; *De Wolf* v. *Johnson,* 10 *Wheat.* 367.

If the story of Morris be true, the alleged illegal reservations of $110, on these notes, would be cured by the subsequent agreement and mortgage.

Upon the whole evidence, tried by the settled rules to which it must be subjected, the defence in this case has not, in my judgment, been maintained. The defendant may not have received the full sums named in the mortgages, but that he did not, must appear beyond reasonable doubt. While the transactions were fresh, he declared, under his own hand and seal, that he had received them. He cannot now ask this court to declare to the contrary, except upon evidence that admits of no other probable conclusion. Each party testifies for his own interest; but the defendant is impeaching his own solemn obligations, and denying the truth

of his former statements and acts. To prevail, he must leave no serious misgivings in the mind of the court, as to his latest statements being the true ones.

I must advise a decree in accordance with the above.